UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK MOSS,<br>Petitioner,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent. | No. 21-CV-643 (KMK) |
| UNITED STATES OF AMERICA<br>v.<br>FRANK MOSS,<br>Defendant. | No. 19-CR-583 (KMK)<br><br><u>OPINION & ORDER</u> |

<u>Appearances</u>:

Frank Moss
*Pro se Petitioner*

Michael D. Maimin, Esq.
United States Attorney's Office
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, United States District Judge:

Frank Moss ("Petitioner") has filed a Petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his judgment of conviction, entered on May 14, 2020, which included a sentence of 262 months' imprisonment—the bottom of the advisory Guidelines range—as well as to five years of supervised release

and a $100 mandatory special assessment, imposed after Petitioner pled guilty. (*See generally* Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. No. 1, Case No. 21-CV-643); J. in Def.'s Crim. Case ("J.") (Dkt. No. 35, Case No. 19-CR-583).)[1] For the foregoing reasons, the Petition is denied.

## I. Background

### A. Factual Background

#### 1. Charges

On November 13, 2018, the Government charged Moss in a Complaint with three narcotics-counts—one conspiracy to distribute and possess with intent to distribute Fentanyl with death resulting, and two substantive charges with distribution of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. (Compl. (Dkt. No. 2, Case No. 19-CR-583).) On August 16, 2019, the Government charged Moss in a Felony Information with a single count of conspiracy to distribute and possess with intent to distribute Fentanyl, in violation of 21 U.S.C. § 846. (Dkt. No. 23, Case No. 19-CR-583.) Rachel Martin from the Federal Defenders' Services Office was initially appointed to represent Moss. (Dkt. No. 4, Case No. 19-CR-583.) At some point thereafter, Mark Gombiner from the Federal Defenders' Services Office assumed representation of Moss.

#### 2. Offense Conduct

On February 23, 2017, Moss was released to parole from a nine-year sentence of imprisonment. (Final Presentence Investigation Rep. ("PSR") ¶ 53 (Dkt. No. 28, Case No. 19-

[1] Certain of the Parties' papers were filed on Petitioner's criminal docket, Case No. 19-CR-583, and certain on Petitioner's civil docket, Case No. 21-CV-643. The docket citations indicate on which docket each document was filed.

CR-583).) Beginning in February 2017, Moss agreed with others to sell Fentanyl. (*Id.* ¶ 2.) He and others distributed between 400 grams and 1.2 kilograms of Fentanyl until his arrest in August 2017. (*Id.* ¶¶ 25, 28.)

As of August 2017, Moss was selling Fentanyl with the stamp "Go Time." (Compl. ¶ 14(b).). On August 18, 2017, a confidential information ("CI") was released from prison and was in contact with Moss. (PSR ¶ 9.) On August 19, 2017, the CI agreed to sell Fentanyl for Moss, which was now labeled "No Days Off," who paid him $200 for every three bundles the CI sold. (*Id.*) Soon thereafter, the CI met with Moss, who said that the No Days Off envelopes contained "pure Fentanyl," and the CI later reported to Moss that "people were falling out" and overdosing after taking the substance. (Compl. ¶ 14(c), (d); PSR ¶ 10.) In response, Moss laughed and said, "that's what the people want." (Compl. ¶ 14(d); PSR ¶ 10.)

On August 21, 2017, the CI observed Moss in his car talking with two older women, one of whom was known as "Jules." (*Id.* ¶ 16.) The two women, along with the CI and Moss, talked about buying heroin, but "Jules" explained that she first needed to go to an ATM. (*Id.*) Moss took three bundles of "No Days Off" from his car, gave two glassine bags to Jules for free and handed the other 28 bags to the CI, who in turn sold two of the bags to "Jules." (*Id.*) Two days later, Julie Mach (the person known as "Jules") and Aracelis Batista were found dead in their apartment. (*Id.* ¶ 17.) A medical examination determined that both had died from Fentanyl overdoses. (*Id.* ¶ 18.) A search of their apartment revealed glassine baggies stamped with "No Days Off." (*Id.* ¶ 19.)

The CI contacted Moss via telephone and arranged a meeting that happened on August 23, 2017, this time under law enforcement supervision. (*Id.* ¶ 13.) The meeting took place in Moss's car, where Moss provided 29 glassine envelopes of Fentanyl with the "No Days Off"

stamp. (*Id.*) After this meeting, law enforcement officers executed a search of a premises to which Moss had access and his vehicle and found over 200 glassine baggies stamped "No Days Off." (*Id.* ¶ 14.) Following his arrest, Moss waived his *Miranda* rights and admitted to being involved in selling heroin for a "couple of weeks," and that he had a "guy," identified as the CI, who "deals with people in the street." (*Id.* ¶ 20.)

3. Guilty Plea

Soon after Moss was charged in a complaint, counsel for the Government and Moss engaged in plea discussions. At the outset, the Government indicated that in the absence of a plea, it was contemplating the filing of an indictment that would include the same charges in the Complaint and add a "death resulting" count that would carry a sentence of mandatory life imprisonment, and the filing of a prior felony information, which would carry a mandatory minimum of 20 years' imprisonment separate and apart from the mandatory life exposure from the "death resulting" count. (Decl. of Michael D. Maimin ("Maimin Decl.") ¶ 6 (Dkt. No. 13-1, Case No. 21-CV-643).) The Government also provided pre-indictment discovery, including recorded calls between Moss and the CI, Moss's post-arrest statement, and medical examiner reports for the two overdose victims. (*Id.* ¶ 7.)

Mr. Gombiner came on to the case to replace Ms. Martin. (*Id.* ¶ 8.) He asked the Government to consider a plea where Mr. Moss would not be forced to plead to the "death resulting charge," citing a number of mitigating factors. (*Id.* ¶ 9.) Mr. Gombiner's advocacy proved successful, as the Government offered a plea agreement whereby Moss would plead guilty to a one-count information and admit to a conspiracy to distribute and possess with intent to distribute 400 grams and more of Fentanyl, though also admitting that he sold Fentanyl that resulted in the deaths of Ms. Mach and Ms. Batista. (*Id.* ¶ 10.) As a result of this plea

agreement, Moss faced a 10-year mandatory minimum, thus avoiding the 20-year mandatory minimum he faced if the Government filed a prior felony information and the mandatory life sentence he faced if the Government included a death resulting charge. (*Id.*) Mr. Gombiner discussed the plea agreement with Moss before a guilty plea was entered. (Declaration of Mark B. Gombiner ("Gombiner Decl.") (Dkt. No. 45, Case No. 19-CR-583).) In particular, Mr. Gombiner advised Moss that the plea included a mandatory minimum sentence of 10 years' imprisonment, but he made no other statements or promises about what sentence Moss would receive if he pled guilty. (*Id.* ¶ 3.)

On September 12, 2019, Moss pled guilty, pursuant to the above-mentioned agreement, before the Honorable Judith C. McCarthy, who conducted a thorough, textbook plea allocution. During this allocution, Moss was: placed under oath, *see* Fed. R. Crim. P. ("Rule")11(b)(1), (Plea Tr. 3 (Dkt. No. 47-1, Case No. 19-CR-583)); advised of the Government's right, in a prosecution for perjury or false statement, to use against Moss any statement that Moss gave under oath, *see* Rule 11(b)(1)(A), (Plea Tr. 3–4); advised of his right to plead not guilty, *see* Rule 11(b)(1)(B), (Plea Tr. 21); advised of his right to a jury trial, *see* Rule 11(b)(1)(C), (Plea Tr. 21); advised of his right to be represented by counsel, including court-appointed counsel, at trial and at every other stage of the case, *see* Rule 11(b)(1)(D), (Plea Tr. 3, 22); and advised that he would waive these and other rights if the court accepted a plea of guilty, *see* Rule 11(b)(1)(F), (Plea Tr. 22). Moss also was advised of: the nature of the charge to which he was pleading, *see* Rule 11(b)(1)(G), (Plea Tr. 9–10, 23–24); the maximum possible penalty, including imprisonment, fine, and term of supervised release, *see* Rule 11(b)(1)(H), (Plea Tr. 13); the mandatory minimum penalty, *see* Rule 11(b)(1)(I), (Plea Tr. 13); potential forfeiture, *see* Rule 11(b)(1)(J), (Plea Tr. 14); and that, in determining a sentence, the Court was obliged to calculate the

applicable sentencing guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), *see* Rule 11(b)(1)(M), (Plea Tr. 17). Moss also was advised of the terms of the plea-agreement provision waiving the right to appeal or to collaterally attack the sentence, *see* Rule 11(b)(1)(N), (Plea Tr. 19–20).

Of critical importance to the resolution of this Petition, Judge McCarthy allocated Moss repeatedly about the fact that he faced a maximum of life imprisonment, that there was no guaranteed sentence, and that this Court would ultimately decide the sentence to be imposed within the statutory limits:

> JUDGE MCCARTHY: I want to go over certain aspects of the plea agreement with you.
>
> If you are convicted of the charges contained in the felony information, either after trial or by plea of guilty, *you would be subject to a maximum term of life imprisonment, a mandatory minimum term of imprisonment of ten years*, a maximum term of lifetime supervised release, a mandatory minimum term of five years supervised release, a maximum fine pursuant to 21 U.S.C. Section 841(b)(1)(A) and 18 U.S.C. Section 3571 of the greatest of ten million dollars, two times the gross pecuniary gain derived from the offense or two times the gross pecuniary loss to persons other than you resulting from the offense and a hundred dollar mandatory special assessment.
>
> Do you understand that?
>
> MOSS: Yes, ma'am.
>
> JUDGE MCCARTHY: If you are sentenced to a term of imprisonment, even if you are sentenced to the maximum term of imprisonment, and if you are also sentenced to a term of supervised release, and you then violate the conditions of your supervised release, you could be sentenced to an additional term of imprisonment for violating the conditions of your supervised release which in this case would be an additional term of up to five years.
>
> Do you understand that?
>
> MOSS: Yes, ma'am.

(Plea Tr. 13–14 (emphases added).)

JUDGE MCCARTHY: Do you understand that the United States Sentencing Commission has issued guidelines for judges to follow in determining the appropriate sentence in a criminal case?

MOSS: Yes.

JUDGE MCCARTHY: Do you also understand that the guidelines are not mandatory but they must be considered by the Court along with other factors listed in 18 U.S.C., Section 3553, when the judge determines the appropriate sentence to impose including possible departures from the guidelines?

MOSS: Yes.

JUDGE MCCARTHY: Have you and your attorney talked about how the sentencing guidelines would be calculated in your case?

MOSS: Yes, ma'am.

JUDGE MCCARTHY: *The plea agreement in this case sets forth a stipulated sentencing range of 262 to 327 months imprisonment with a mandatory minimum term of 120 months imprisonment*, and a stipulated fine range of $35,000 to $10 million.

*Do you understand that this is simply an understanding between you and your lawyer and the lawyer for the government and that it is not binding on the District Judge when he imposes sentence?*

MOSS: Yes, ma'am.

JUDGE MCCARTHY: Do you understand that the District Judge will consider the [G]uidelines but will impose a sentence in accordance with the statute which in this case means that the prison term will not be for more than 327 months imprisonment with a mandatory minimum term of 120 months imprisonment.

MR. MAIMIN: I'm sorry, the statute has a life maximum. It's the guideline—

JUDGE MCCARTHY: I apologize, I do realize that. I was looking at the wrong part of the letter.

So I'll go over that again so there's no confusion, Mr. Moss. Do you understand that the Court will consider the guidelines but will impose a sentence in accordance with the statute? *In this case the statute has a maximum term of life imprisonment and a mandatory minimum term of ten years imprisonment.*

Do you understand that?

MOSS: Yes, ma'am.

> JUDGE MCCARTHY: Do you understand the Court will not be able to determine the appropriate sentence until after the presentence report has been prepared, until you and your attorney, as well as the government, have had an opportunity to challenge the facts reported in the presentence report as well as the calculation of the sentencing guideline range and any sentence recommendation in that report?
>
> MOSS: Yes.

(Plea Tr. 17–19 (emphases added).)

> JUDGE MCCARTHY: I also want to go over the rights you're giving up relating to your ability to appeal. *You're agreeing not to file a direct appeal nor bring a collateral challenge, including but not limited to an application under 28 U.S.C., Sections 2255 and/or 2241 of any sentence within or below the stipulated guideline range of 262 to 327 months in prison*, and the government will not appeal any sentence within or above the stipulated guideline range.
>
> Do you understand that?
>
> MOSS: Yes, ma'am.

(Plea Tr. 19–20 (emphases added).)

> JUDGE MCCARTHY: Do you understand that if you disagree with the Court's sentencing decision, that will not give you a basis for withdrawing your plea of guilty?
>
> MOSS: Yes.

(Plea Tr. 20.)

> JUDGE MCCARTHY: Has anyone made any promises to you other than what is set forth in the plea agreement in order to induce you to plead guilty?
>
> MOSS: No, ma'am.
>
> JUDGE MCCARTHY: Has anyone made any specific promises to you about what the sentence of the Court will be?
>
> MOSS: No.

(Plea Tr. 25–26.)

Finally, Moss explained that he had discussed the case with his attorney, and he was satisfied with his representation:

> JUDGE MCCARTHY: Thanks. Have you had time to talk to your attorney about the charges and how you wish to plead?
>
> MOSS: Yes, ma'am.
>
> JUDGE MCCARTHY: Have you discussed with your attorney the charges against you including the charges you intend to plead guilty to as well as any other charges that the government may have made in this case?
>
> MOSS: Yes, I have.
>
> JUDGE MCCARTHY: Has your attorney told you the consequences of pleading guilty?
>
> MOSS: Yes, ma'am.
>
> JUDGE MCCARTHY: Are you satisfied with your attorney's representation of you?
>
> MOSS: Yes, ma'am.
>
> JUDGE MCCARTHY: Have you told your attorney everything you know about this case?
>
> MOSS: Yes, ma'am.

(Plea Tr. 10–11.)

Before recommending this Court accept the plea, Judge McCarthy found that the plea was voluntary, and did not result from force, threats, or promises (other than promises in a plea agreement), *see* Fed. R. Crim. P. 11(b)(2). (Plea Tr. 12–13, 25–26, 28.) Judge McCarthy also determined that there was a factual basis for the plea, *see* Fed. R. Crim. P. 11(b)(3). (Plea Tr. 24–28.) This Court accepted Moss's plea. (Order Accepting Plea Allocution ("Plea Acceptance Order") (Dkt. No. 27, Case No. 19-CR-583).)

4. <u>Sentence</u>

Mr. Moss was sentenced on January 29, 2020. Prior to sentence, both Moss and the Government filed memoranda. (Def.'s Sentencing Submission (Dkt. No. 32, Case No. 19-CR-583); Gov't's Sentencing Submission (Dkt. No. 33, Case No. 19-CR-583).) At sentence, counsel

for Moss and the Government spoke at length about the factors set forth in 18 U.S.C. § 3553(a). Moss also gave a statement acknowledging his role in the distribution of the narcotics that led to the deaths of Ms. Mach and Ms. Batista but also expressed remorse for his conduct. (Sent. Tr. 20–21 (Dkt. No. 47-2, Case No. 19-CR-583).) After hearing from the Parties, the Court evaluated the Section 3553(a) factors and imposed a sentence at the low end of the Guidelines Range—262 months' imprisonment. (*Id.* 23–30.)

B. Procedural History

Moss timely filed the Petition and the Government filed a timely Opposition. (Mot. To Vacate Under 28 U.S.C. § 2255 ("§ 2255 Mot.") (Dkt. No. 37, Case No. 19-CR-583); Gov't's Mem. in Opp. To Def.'s § 2255 Mot. To Vacate ("Opp. Mem.") (Dkt. No. 46, Case No. 19-CR-583).)

## II. Discussion

### A. Standard of Review

#### 1. Habeas Petitions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[2] "Because collateral challenges are in 'tension with society's

---

[2] 28 U.S.C. § 2255(a) provides, in full:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may

strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995)). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *See Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). Finally, because Petitioner filed his initial Petition pro se, the Court construes the Petition and his other submissions "liberally and interpret[s] [the] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

---

move the court which imposed the sentence to vacate, set aside or correct the sentence.

("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (italics and citation omitted)).

2. Ineffective Assistance Claims

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

A habeas petitioner cannot meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, "[t]here is a strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Bonilla v. Lee*, 35 F. Supp. 3d 551, 575 (S.D.N.Y. 2014); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013). Thus, to satisfy this prong, a habeas petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011) (same). In assessing counsel's conduct, "a reviewing court must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, a habeas petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also McNaught v. United States*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009) (same). Here, this requires the Court to determine if the absence of any alleged deficiencies in representation would have resulted in a different outcome. *See United States v. Reiter*, 897 F.2d 639, 644–45 (2d Cir. 1990) (affirming rejection of ineffective assistance of counsel claim even though defense counsel's failure to move to suppress evidence, poor cross-examination, and frequent lateness and absences fell below professionally reasonable standards, given overwhelming evidence of defendant's guilt).

In considering assertions of ineffective assistance, it is important to note that, as a general matter, courts need not accept uncorroborated, self-serving statements by a habeas petitioner. *See Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973) (noting that courts may discount "uncorroborated, untimely, self-serving testimony"); *United States v. Wisniewski*, 478 F.2d 274, 284 (2d Cir. 1973) ("[I]n the absence of objective evidence of corroboratory circumstances, [ineffective assistance of counsel] claims must be viewed with some suspicion, especially when there has not been submitted a supporting affidavit of the attorney . . . ."); *Oree v. Conway*, No. 10-CV-4346, 2011 WL 710602, at *17–18 (S.D.N.Y. Mar. 1, 2011) (same), *adopted by* 2011 WL 2652575 (S.D.N.Y. July 7, 2011); *see also Grullon v. United States*, 99-CV-1877, 2004 WL 1900340, at *6–7 (S.D.N.Y. Aug. 24, 2004) (noting that "a court need not accept a petitioner's uncorroborated, self-serving testimony as true"); *Slevin v. United States*, 71 F. Supp. 2d 348, 356 n. 7 (S.D.N.Y. 1999) ("The Second Circuit has invariably affirmed a trial judge's right to discount a *habeas* petitioner's uncorroborated, self-serving testimony." (collecting cases)), *aff'd*, 234 F.3d 1263 (2d Cir. 2000). Indeed, "[w]ary of such allegations, courts have consistently required evidence beyond a defendant's unsupported, self-serving statements to support a claim

of ineffective assistance." *Pacheco v. United States*, No. 02-CV-4266, 2006 WL 760287, at *6 (S.D.N.Y. Mar. 23, 2006); *see also Montgomery v. Wood*, 727 F. Supp. 2d 171, 186–87 (W.D.N.Y. 2010) ("Petitioner's unsubstantiated assertions . . . are insufficient to demonstrate that trial counsel's performance was deficient."); *Hayward v. Brown,* No. 09-CV-6495, 2010 WL 2629037, at *22–23 (S.D.N.Y. July 1, 2010) (Petitioner "has not satisfied his burden because he has not provided evidence, besides his own self-serving statements, indicating that he was unaware either that he had the right to testify or that it was ultimately his decision." (report and recommendation); *White v. Greene*, No. 05-CV-545, 2010 WL 2104290, at *3 (W.D.N.Y. May 24, 2010) ("A defendant's bare, unsupported assertion, even in affidavit form, is generally insufficient; rather, courts have required 'greater particularity' and 'some substantiation' to state a claim."); *Shodunke v. Cnty. of Queens*, No. 07–CV–329, 2009 WL 5172895 at *8 (E.D.N.Y. Dec. 30, 2009) ("The record contains no statement from petitioner's trial counsel and the 440 court's decision, as noted, makes no finding with respect to whether such was counsel's advice. We, likewise, have no basis for assessing petitioner's unsupported assertion or passing upon the 'deficient performance' prong of the *Strickland* test."); *Grullon*, 2004 WL 1900340, at *6–7 ("[T]he failure of the petitioner to submit an affidavit from counsel corroborating an ineffective assistance of counsel claim provides sufficient justification to dismiss a petition.").

Moreover, when it comes to counsel's guidance about likely sentences, the Second Circuit has made clear that, "[w]here, as here, [the] specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether the [petitioner] was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (internal quotation marks omitted). Thus, for example, while a

"factual" error, that is, a failure to accurately advise a client about the consequences of a plea offer, may provide a basis for relief, a "predictive" error, that is, an inaccurate prediction about the sentence that could be imposed, "does not rise to the level of ineffective assistance of counsel." *United States v. Diaz*, No. 07-CR-003, 2009 WL 4496052, at *3 (S.D.N.Y. Dec. 3, 2009) (citing *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989)).

B. Analysis

Moss argues that Mr. Gombiner was constitutionally ineffective for: (1) falsely advising Moss that, by pleading guilty, he would receive a sentence of no more than ten to twelve years of imprisonment; and (2) failing adequately to investigate witnesses who would have established that one of Moss's co-conspirators was the "principal" distributor of "No Days Off." (Pet. 5.) These claims fail in the face of the undisputed record in this case.

1. Gombiner's Alleged Sentence Prediction

In his first ineffective assistance claim, Moss asserts that Mr. Gombiner "coerce[d]" him into agreeing to plead guilty when he "informed . . . Moss that[] he would not be sentence[d] to . . . more than []10 to []12[] years if . . . Moss plead[ed guilty] to [violating 21 U.S.C. §§ 846 and] 841([b])(1)(A)." (Pet. 5.) This self-serving and unsubstantiated claim is thoroughly and repeatedly belied by the record in this case and, in particular, Moss's statements *under oath* during his plea allocution.

First, during his plea, Moss acknowledged several times that he understood that he faced a maximum of life in prison. For example, in referring to the plea agreement that Moss signed, Judge McCarthy clearly and explicitly explained to Moss that if he was "convicted of the charges contained in the felony information, either after trial or by plea of guilty, [he] *would be subject to a maximum term of life imprisonment*," and Moss said under oath that he understood

this. (Plea Tr. 13 (emphasis added).) And, in discussing the Sentencing Guidelines, Moss also said he understood when Judge McCarthy explained to Moss that while this Court will consider the Sentencing Guidelines in determining the appropriate sentence, "*[i]n this case the statute has a maximum term of life imprisonment*." (*Id.* 18–19 (emphasis added).)

Moreover, during his plea allocution, Moss stated under oath that he understood that the Court "determines the appropriate sentence to impose" after considering the Guidelines "along with other factors listed in 18 U.S.C.[] Section 3553," bounded only by the statutory minimum (10 years' imprisonment) and maximum (life imprisonment). (*Id.* 17–19.) Indeed, Judge McCarthy emphasized the scope of the Court's discretion and Moss admitted under oath that he understood he would have no right to withdraw his plea of guilty even "if [he] disagree[d] with the Court's sentencing decision." (*Id.* 20.) And further on the subject of the Guidelines, Moss admitted under oath that he understood that he and the Government stipulated that the applicable Guidelines range was 262 to 327 months' imprisonment—substantially higher than the 120 to 144 months' imprisonment that Moss now claims he understood he could get. (Plea Tr. 18–20.) In fact, Moss said he understood that he was giving up his right to appeal or collaterally attack any sentence below 327 months' imprisonment, which is more than twice the high end of the range to which Moss now claims was the cap on his sentence. (Plea Tr. 19–20.)

Finally, contrary to his assertion in support of his Petition, Moss stated under oath that nobody made him any promises to induce him to plead guilty and, in particular, that nobody promised him what his sentence would be. (Plea Tr. 25–26; *see also* Plea Tr. 13 (Moss confirming that nobody "force[ed him], coerce[d him] or threaten[ed him] or promise[d him] anything other than what is set forth in the written plea agreement in order to get [him] to sign the plea agreement.").)

In light of Moss's many statements and admissions, all under oath, that he understood the maximum penalty was life imprisonment, that he stipulated to a Guidelines Range of 262 to 327 months, that the determination as to what sentence he would receive rested solely with the Court, and that nobody promised him anything, including what sentence he would receive, it is folly for Moss to seek the relief in the Petition on the unsubstantiated claim that his lawyer guaranteed him a sentence of between 10 and 12 years' imprisonment. *See Ingram v. United States*, Nos. 17-CV-7110, 14- CR-760, 2020 WL 6323822, at *4 (S.D.N.Y. Oct. 28, 2020) (rejecting claim that there was a side agreement where petitioner stated at his plea that "no promises had been made to him outside the Cooperation Agreement" and that "no one had promised him what sentence he would receive"); *Sinclair v. United States*, No. 10-CR-392, 2013 WL 3716898, at *3 (S.D.N.Y. July 16, 2013) (denying Section 2255 motion, where statements made during plea allocution contradicted claims in support of the motion); *Ochoa-Suarez v. United States*, Nos. 07-CV-9275, 03-CR-747, 2008 WL 2220637, at *4 (S.D.N.Y. May 27, 2008) ("summarily reject[ing]" a Section 2255 claim that counsel led her to believe she could receive sentence below ten years, where petitioner acknowledged the mandatory minimum during her plea mandatory minimum and that no other promises had been made). Simply put, Moss's statements under oath during his plea conclusively refute his self-serving and unsubstantiated claim in support of his Petition. *See Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) (noting that a "defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force"); *United States v. Diaz*, 770 F. Supp. 840, 847 (S.D.N.Y. 1991) ("Courts in this Circuit grant considerable deference to apparently truthful statements made by a defendant in the course of a plea allocution.").

Any doubt about this outcome is erased by the uncontradicted declaration from Mr. Gombiner, who attested under oath: "I discussed the terms of the plea agreement with Mr. Moss on several occasions prior to the time he pled guilty. *Other than telling him that the mandatory minimum term of imprisonment was ten years, I did not promise him that he would receive any particular sentence*." (Gombiner Aff. ¶ 3 (emphasis added).) This statement is more than sufficient evidence to deny Moss's Section 2255 motion without an evidentiary hearing, particularly in combination with Moss's sworn statements at his plea allocution. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (affirming district court's denial of a Section 2255 motion without a hearing where the record had been supplemented by an affidavit from trial counsel addressing the petitioner's ineffective assistance of counsel claim); *Kone v. United States*, Nos. 05-CR-102, 10-CV-2424, 2012 WL 13171348, at *2 (S.D.N.Y. Jan. 26, 2012) (holding that "a hearing is not warranted when a habeas petitioner's 'affidavit is replete with the type of self-serving and improbable assertions that the Second Circuit [has] rejected . . . and presents a version of events that is in stark contrast to the version recounted in counsel's affidavit.'" (quoting *Botero v. United States*, Nos. 96-CR-145, 00-CV-1922, 2005 WL 1606911, at *2 (D. Conn. July 6, 2005))); *Grullon*, 2004 WL 1900340, at *6–7 (noting that "a court need not accept a petitioner's uncorroborated, self-serving testimony as true"); *Slevin v. United States*, 71 F. Supp. 2d 348, 356 n. 7 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 1263 (2d Cir. 2000) ("The Second Circuit has invariably affirmed a trial judge's right to discount a *habeas* petitioner's uncorroborated, self-serving testimony." (collecting cases)).

Therefore, the Court denies this claim without a hearing.

2. Failure to Investigate

As a second basis for his ineffective assistance claim, Moss asserts, with no detail, that Mr. Gombiner's was ineffective because he "refus[ed] to investigate three (3) relevant witnesses who could establish proof the CI was the principal supplier of the drugs 'No Days Off.'" (§ 2255 Mot. 5) The Court is unpersuaded.

First, Moss's claim is conclusory. For example, he does not say what any (unnamed) witnesses would say, much less what they would say that would have changed the course of his case, caused him not to plead guilty, or affected this Court's sentence. To the extent, Moss is claiming that some witness would testify that the CI sold at least some of No Days Off to Moss's victims directly, that was already noted in the PSR. (PSR ¶ 16.) If he is claiming that the CI was the on-the-ground supplier of "No Days Off" on the street, that is also entirely consistent with record, as Moss supplied the CI, who then sold Moss's drugs. (*Id.* ¶¶ 9–10.) And, it is entirely left to the imagination what the witnesses would say about the controlled transaction, where Moss supplied the CI with three bundles of No Days Off, about the recorded phone call where Moss acted as the supplier, or about the 198 No Days Off glassines at Moss's building and the 14 glassines in Moss's car. These and many other open questions about the unspecified testimony of unspecified witnesses dooms this claim. *See*, *e.g.*, *Brancaccio v. United States*, No. 14-CV-1538, 2015 WL 4104847, at *4 (S.D.N.Y. July 2, 2015) ("'To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation.'" (quoting *Medrano v. United States*, Nos. 13-CV-1604, 06-CR-61, 2015 WL 848551, at *22 (S.D.N.Y. Feb. 27, 2015))); *United States v. Peterson*, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012) ("To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, 'a petitioner must do more than make vague, conclusory, or speculative

claims as to what evidence could have been produced by further investigation.'" (quoting *Taylor v. Poole*, No. 07-CV-6318, 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009), *adopted by* 2011 WL 3809887 (S.D.N.Y. Aug. 24, 2011) (collecting cases)). This failure is not only problematic because it prevents the Court from determining what, if any, prejudice there could be, but, "where a petitioner claims that his attorney failed to investigate potential witnesses, 'the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony.'" *Peterson*, 896 F. Supp. 2d at 316 (quoting *Taylor*, 2009 WL 2634724, at *15).

Again, any doubt about the fate of this claim is eliminated by Mr. Gombiner's Declaration. Although this case was never indicted, the Government provided Mr. Gombiner and prior counsel with pre-indictment discovery, including recordings of controlled phone calls between the CI and Moss, Moss's post-arrest statement, and reports from the medical examiner regarding Moss's victims. (Maimin Decl. ¶ 7.) Based on this, "[p]rior to Mr. Moss pleading guilty, [Mr. Gombiner] reviewed the discovery and conducted the investigation [he] believed appropriate for his case." In the face of only conclusory claims to the contrary, Moss has failed to establish that Mr. Gombiner was ineffective. (Gombiner Decl. ¶ 4.) *See Strickland*, 466 U.S. at 690–91 (noting that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *see also Thomas v. United States*, Nos. 17-CV-6877, 15 Cr. 667, 2020 WL 1285622, at *11 (S.D.N.Y. Mar. 18, 2020) (denying Section 2255 motion based on alleged ineffectiveness of counsel, including allegation of a failure to investigate, where the movant "failed to allege with any specificity how he would have been prejudiced by this conduct," and noting that "[t]hese "conclusory allegations[,] unsupported by specifics[, are] subject to summary

dismissal[.]" (quoting *United States v. Cabrera*, 563 F. App'x 861, 863 (2d Cir. 2014)) (brackets and alterations in *Thomas*)); *Paige v. Lee*, 99 F. Supp. 3d 340, 349–50 (E.D.N.Y. 2015) ("Because Petitioner's claim of ineffective assistance of counsel based on failure to investigate is simply too vague and conclusory to state a proper ground for habeas relief under either *Strickland* prong, it must be dismissed as meritless."); *Powers v. Lord*, 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2006) (noting that "undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong").

Thus, the Court rejects this claim without the need for a hearing.

## III. Conclusion

For the foregoing reasons, the Petition is dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of Court is respectfully directed to terminate the instant Petition, enter judgment for Respondent in Case No. 21-CV-643; close Case No. 21-CV-643; and mail a copy of this Opinion to Petitioner at the address listed in the docket for Case No. 21-CV-643.

SO ORDERED.

Dated: November 16, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge